## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
**CARLOS PATINO, by his father and next**  )
**friend, PEDRO PATINO, and MARIA**  )
**PATINO,**  )
 )
        **Plaintiffs,**  )     **Civil No.**
 )     **13-11114-FDS**
        **v.**  )
 )
**CITY OF REVERE, OFFICER CHARLES**  )
**CALLAHAN, OFFICER JOSEPH DUCA,**  )
**MASSACHUSETTS STATE POLICE,**  )
**TROOPER PAUL MCCARTHY,**  )
**TROOPER JESSE SWEET, and other as**  )
**yet unnamed law enforcement officers of the**  )
**REVERE POLICE DEPARTMENT, THE**  )
**METRO-BOSTON GANG UNIT, and THE**  )
**MASSACHUSETTS STATE POLICE,**  )
 )
        **Defendants.**  )
 )
_____)


## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**SAYLOR, J.**

      This is a civil rights action arising out of a police arrest.  Plaintiff Carlos Patino is a 42-year-old adult who suffers from significant mental disabilities.  This suit is brought on his behalf by his parents, Pedro and Mario Patino.  Maria Patino has also brought suit on her own behalf. The named defendants are four law enforcement officers, the City of Revere, and various law enforcement agencies.

      The amended complaint alleges twelve causes of action:  a claim under 42 U.S.C. § 1983 for violation of equal protection (Count One); a § 1983 claim for excessive force in violation of

due process (Count Two); a § 1983 claim for excessive force and false arrest in violation of the

Fourth Amendment (Count Three); a claim for common-law intentional infliction of emotional

distress (Count Four); a claim for vicarious liability for negligence under Mass. Gen. Laws ch.

258 (Count Five); a claim for excessive force and lack of probable cause to arrest in violation of

Mass. Gen. Laws ch. 12, §§ 11H & 11I (Count Six); a claim for common-law false arrest (Count

Seven); a claim for common-law battery (Count Eight); a § 1983 claim for failure to train,

supervise, or discipline (Count Nine); a claim for failure to train, supervise, or discipline under

Mass. Gen. Laws ch. 258 (Count Ten); a claim for negligent supervision under Mass. Gen. Laws

ch. 258 (Count Eleven); and a claim for disability discrimination under the Americans with

Disabilities Act, 42 U.S.C. § 12101 ("ADA") (Count Twelve).

Various defendants have filed motions to dismiss some or all of the claims alleged in the

complaint.  For the following reasons, the motion brought by Callahan and Duca will be denied.

The motions brought by the State Police, the City of Revere, and McCarthy will be granted.

## I.   **Background**

### A.   **Factual Background**

The facts are set forth as alleged in the amended complaint.

Carlos Patino is a 42-year-old adult with significant mental and psychological

disabilities.  Maria Patino is Carlos Patino's mother; Pedro Patino is his father.

Charles Callahan and Joseph Duca are officers of the Revere, Massachusetts Police

Department.  Paul McCarthy and Jesse Sweet are officers of the Massachusetts State Police.

On the afternoon of May 7, 2010, Carlos Patino was sitting in a lawn chair behind his

home.  His mother was inside the home.  Officers McCarthy, Sweet, Callahan, and Duca ran into

the patio area where Carlos Patino was sitting.  Their guns were drawn.

Frightened by the officers, Carlos ran towards the house and his mother.  The officers pursued him and forcefully brought him to the ground, delivering blows to his head and chest. They then handcuffed him and placed him into custody.  As the police were subduing Carlos, Maria Patino ran outside and told them that her son had special needs.  She was speaking primarily in Spanish, and was ignored.  A neighbor's intervention caused the police to realize they had arrested an innocent man and they released Carlos from custody.

Carlos was transported to the hospital by an ambulance for medical attention.  He was treated for a fractured rib and multiple injuries to his forehead, left arm, right knee, and back.  He was never charged with any crime.

### B.  <u>Procedural Background</u>

On May 6, 2013, plaintiffs brought this suit against McCarthy, Sweet, Callahan, Duca, the City of Revere, the Massachusetts State Police, and various unnamed law enforcement officers.

Summonses were issued as to all defendants on May 7.  On August 30, 2013, plaintiffs attempted to serve Callahan and Duca at the Revere Police Department.  A police dispatcher, Lori Delossantos, accepted the summonses and complaints and said she would get them to Callahan and Duca.  Callahan and Duca found the summonses and complaints in their internal police mailboxes on September 4 and 5, respectively.

Defendants Callahan and Duca have moved to dismiss all claims against them under Fed. R. Civ. P. 12(b)(5), alleging insufficient service of process.  Defendants the City of Revere and the Massachusetts State Police have also moved to dismiss all claims against them under Fed. R.

Civ. P. 12(b)(6).  Defendant McCarthy has moved to dismiss the negligence and Massachusetts

Civil Rights Act claims against him (Counts Five and Six).  Plaintiffs have not opposed the

motions of the State Police or McCarthy.

## II.   <u>Standard of Review</u>

### A.   <u>Service of Process</u>

Before a federal court may exercise personal jurisdiction over a defendant, proper service

of process must be effected.  *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104

(1987).  Rule 4 sets forth the acceptable methods for service of process.  Under Rule 4(e), there

are four ways in which an individual defendant can be served within a judicial district of the

United States:  (1) by following the requirements of state law for serving a summons in actions

brought in the courts of general jurisdiction in the state where the district court is located or

where service is made (here, Massachusetts); (2) by delivering a copy of the summons and the

complaint to the individual personally; (3) by leaving copies of those items at the individual's

dwelling or usual place of abode with someone of suitable age and discretion who resides there;

or (4) delivering copies to an agent authorized by appointment or by law to receive service of

process.  Fed. R. Civ. P. 4(e).

The Massachusetts rules for service are substantially similar to the federal rules.  Service

can be made upon an individual by "delivering a copy of the complaint to him personally; or by

leaving copies thereof at his last and usual place of abode; or by delivering copy of the summons

and of the complaint to an agent authorized by appointment or by statute to receive service of

process . . . ."  Mass. R. Civ. P. 4(d)(1).

Under the federal rules, service of process must take place within 120 days after the

complaint is filed, or the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

### B.      Motion to Dismiss

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

### III.    Callahan and Duca's Motion to Dismiss

Defendants Callahan and Duca have moved to dismiss all claims against them, contending that they were not properly served.

1.     **Plaintiffs' Attempts at Service**

A defendant must be served within 120 days after a complaint is filed.  Fed. R. Civ. P. 4(m).  The complaint in this case was filed on May 6, 2013, and therefore the 120-day window for service of process expired on September 3, 2013.  It is undisputed that Callahan and Duca were not served personally or at their dwelling or usual place of abode within that time period. Therefore, proper service turns on whether Delossantos, the police dispatcher, was an agent of Callahan or Duca authorized to accept service of process on their behalf.

A return of service "generally serves as *prima facie* evidence that service was validly performed."  *Blair v. City of Worcester*, 522 F.3d 105, 111 (1st Cir. 2008).  A defendant, however, may adduce "rebuttal evidence to refute any presumption of valid service."  *Id.* at 111-112.  "Under Massachusetts law, an affidavit is sufficient to refute the *prima facie* presumption created by a return of service.  Similarly, federal courts have held that an affidavit denying agency, standing alone, may be sufficient to overcome the presumption of proper service created by the return of service."  *Id.* at 112 (collecting cases) (internal citations omitted).

Here, the returns of service on Callahan and Duca were filed on September 3, 2013. Callahan and Duca have submitted affidavits stating that they did not appoint Delossantos or any other person to be their agent and accept service for them.  Those affidavits are sufficient to overcome the presumption of proper service.  *Id.* at 112 (citing *Rivera-Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992)).

Plaintiffs contend that because Delossantos had apparent authority to accept service for Callahan and Duca, service was completed within the 120-day time period.  The relevant inquiry, however, is whether Delossantos had *actual authority* to receive process.  *See Blair*, 522

F.3d at 113 (collecting cases requiring actual authority to receive service of process); *Ocasio-Lozada v. United States*, 2009 WL 3698026, at *1 (D.P.R. Nov. 2, 2009) ("Even if established, . . . apparent authority to receive process would be insufficient."). This authority can be express or implied. *See Blair*, 522 F.3d at 113.

Plaintiffs' only evidence of Delossantos's actual authority is an affidavit from their process server stating that Delossantos said she could accept service for Callahan and Duca. (Chaupetta Aff. ¶ 8). The affidavit also states that the process server has served many police officers at police stations over the years, and someone other than the named defendant often accepts service on their behalf. (Chaupetta Aff. ¶¶ 6). In *Blair*, the First Circuit reversed and remanded the dismissal of a case due to insufficient service of process, finding that the court should have permitted limited discovery and held an evidentiary hearing given the factual uncertainties concerning agency. *Blair*, 522 F.3d at 114. In that case, the plaintiffs had provided an affidavit stating that police officers were served "hundreds" of times in the past by leaving copies of the complaint and summons at the office of the chief of police. *Id.* at 112. They also introduced evidence of a related case where certain of the defendant officers appeared to have been served in a similar manner without objection. *Id.* at 113-14.

Plaintiffs' evidence in this case falls well short of the evidence in *Blair*. There is no contention by plaintiffs that Delossantos was actually appointed by Callahan or Duca to accept service on their behalf, nor do plaintiffs contend that Callahan or Duca accepted service through a police dispatcher at the Revere City Police Department headquarters on past occasions. Although the police dispatcher said she would accept service for Callahan and Duca, the statements of an alleged agent alone are insufficient to prove actual authority. *See Ophthalmic*

*Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 37 n.6 (1st Cir. 2011) ("Under principles of agency,

. . . [a]ctual authority refers to the manifestation [of authority] that *the principal makes to the*

*agent*.") (citing Restatement (Third) of Agency § 2.01 cmt. c (2006)) (emphasis added);

Restatement (Third) of Agency § 6.11(1) ("When an agent . . . makes a false representation

about the agent's authority to a third party, the principal is not subject to liability").  There is no

evidence Callahan or Duca did anything to grant Delossantos the authority to accept service on

their behalf.

Without such evidence, service on Callahan and Duca at their place of employment is

insufficient under both Mass. R. Civ. P. 4(d)(1) and Fed. R. Civ. P. 4(e).  *See Foley v. Walsh*, 33

Mass. App. Ct. 937, 937 (1992) (collecting cases).  Furthermore, plaintiffs have not requested

any discovery to determine whether the Revere Police Department accepts service on behalf of

its officers.  Accordingly, service of process on Callahan and Duca through the dispatcher at the

Revere Police Department was insufficient.[1]

## 2.        Extension of Time for Good Cause

Plaintiffs request a brief extension of time for service.  An extension must be granted if a

plaintiff provides "good cause."

> Good cause is likely (but not always) to be found when the plaintiff['s] failure to
> complete service in [a] timely fashion is a result of a third person, typically the
> process server, the defendant has evaded service of the process or engaged in
> misleading conduct, the plaintiff has acted diligently in trying to effect service or
> there are understandable mitigating circumstance[s], or the plaintiff is proceeding
> pro se or in forma pauperis.  Pro se status or any of the other listed explanations
> for a failure to make timely service, however, is not automatically enough to

---

[1] Plaintiffs also contend that because the City of Revere is required to indemnify Callahan and Duca under
Mass. Gen. Laws ch. 258, § 6, it should have the authority to accept service of process on their behalf.  There
appears to be no authority for the proposition that an indemnification agreement or a statutory requirement of
indemnity, standing alone, authorizes an indemnitor to accept service of process on behalf of an indemnitee.

constitute good cause for purposes of Rule 4(m).

*McIsaac v. Ford*, 193 F. Supp. 2d 382, 383 (D. Mass. 2002) (quoting WRIGHT & MILLER,

FEDERAL PRACTICE AND PROCEDURE:  CIVIL 3d § 1137, at 342 (2002)).

Here, plaintiffs appear to have acted diligently in trying to effect service.  According to the affidavit of the process server, plaintiffs attempted to locate the home addresses of Callahan and Duca in August 2013 but were unable to do so.  (Chauppetta Aff. ¶ 3).  That is not surprising, as the home addresses of police officers are not generally public, and indeed protected by statute from public disclosure.  *See* Mass. Gen. Laws ch. 66, § 10.  Plaintiffs' process server also attempted to serve Callahan and Duca in person, but was told by a Revere City Police Department dispatcher that she would accept service on their behalf.  Plaintiffs did not move to extend the time for service before it expired, but only because they believed process had already been adequately served.  *See Benjamin v. Grosnick*, 999 F.2d 590, 692 (1st Cir. 1993) (noting that failure to investigate adequacy of service was excusable despite notice of some insufficiency where plaintiffs had reason to believe they had properly served the defendant).  Furthermore, the delay in notice to Callahan and Duca was only one or two days past the 120-day window of proper service, and defendants have not pointed to any prejudice that they have suffered due to the delayed service.  *See United States v. Ayer*, 857 F.2d 881, 886 (1st Cir. 1988) (listing lack of prejudice to defendant as one motivation for finding good cause for insufficient service).  Accordingly, the Rule 4(m) service period will be extended until 60 days from the date of this order.  The motion to dismiss will be denied.[2]

---

[2] Even if there is insufficient good cause for plaintiffs' failure to serve Callahan and Duca within the required 120-day period, the Court may in its discretion extend the time for service of process.  *See Crispin-Taveras v. Municipality of Carolina*, 647 F.3d 1, 7 (1st Cir. 2011) (district court "is not required to dismiss a defendant when service is not made within the 120-day deadline," but "also has the option to 'order that service be made within a

Because the previous method of service was defective, plaintiffs must still properly serve Callahan and Duca. The Court recognizes that there are difficulties in serving police officers at their home addresses, and that officers are normally reluctant to publish their home addresses due to security risks. *See Rodriguez v. Kells*, 2012 WL 3596958, at *1 (D. Mass. Jan. 31, 2012) (noting security risks inherent in informing plaintiff prisoners of the home addresses of prison guards); *Boyd v. Rue*, 2010 WL 3824106, at *2 (D. Mass. Sept. 27, 2010) (noting security risks in releasing home address of a prosecutor).

With these considerations in mind, the Court will direct the defendant officers to select one of two alternatives. First, Callahan and Duca may submit to the Court, *ex parte* and under seal, their home addresses. The Court will then complete the service forms and provide those forms, along with copies of the complaint, directly to the U.S. Marshal. *See, e.g.*, *Rua v. Glodis*, 2011 WL 5076319, at *2 (D. Mass. Oct. 24, 2011); *Combs v. Lehman*, 2009 WL 497124, at *2 (W.D. Wash. Feb. 24, 2009) (requiring Washington Department of Corrections to provide, under seal, addresses of retired prison employees for purposes of service by a U.S. Marshal). Alternatively, counsel for Callahan and Duca may (with their clients' permission) agree to accept service on their clients' behalf. *See, e.g.*, *Serrano v. Figueroa-Sancha*, 878 F. Supp. 2d 301, 315 (D.P.R. 2012) (ordering representatives of police department to accept service of process or produce home addresses of defendant police officers). Callahan and Duca will be required to

---

specific time'") (quoting Fed. R. Civ. P. 4(m)). This determination relies on a number of factors, including whether the party to be served received actual notice, the defendant would suffer prejudice, or the plaintiff would be severely prejudiced if the complaint were dismissed. *Bunn v. Gleason*, 250 F.R.D. 86, 90 (D. Mass. 2008) (citing *Riverdale Mills Corp. v. United States Dep't of Transp. Fed. Aviation Admin.*, 225 F.R.D. 393, 395 (D. Mass. 2005)). Callahan and Duca received actual notice of the lawsuit on September 4 or 5, and do not contend that they suffered any prejudice from the delay. Furthermore, it appears that plaintiffs would be unable to file a new case because the limitations period has expired. *See* Fed. R. Civ. P. 4(m) advisory committee's note ("Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service.").

submit their home addresses or have counsel agree to accept service within 21 days of the date of this order.

## IV.  **Motion to Dismiss by Massachusetts State Police**

The Massachusetts State Police has moved to dismiss all claims against it.  Plaintiffs have not opposed that motion.

### A.  **Civil Rights Claims (Counts One, Two, Three, Six, and Nine)**

The federal civil rights claims against the State Police in the complaint are brought under 42 U.S.C. § 1983 (Counts One, Two, and Nine).  The state civil rights claim is brought under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H, 11I (Count Six).  The State Police contends that it is not a "person" under either § 1983 or the MCRA, and therefore cannot be sued for violations of those acts.

"Under 42 U.S.C. § 1983, an aggrieved individual may sue persons who, acting under color of state law, abridge rights, immunities, or privileges created by the Constitution or laws of the United States."  *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991).  "[N]either a State nor its officers in their representative capacities are 'persons' within the meaning of 42 U.S.C. § 1983 with respect to actions for damages."  *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003).  Accordingly, "neither a state agency nor a state official acting in his official capacity may be sued for damages in a [S]ection 1983 action."  *Johnson*, 943 F.2d at 108.  As a state agency, the State Police cannot be sued under 42 U.S.C. § 1983.

Similarly, the MCRA prohibits civil rights violations by "any person or persons."  Mass. Gen. Laws ch. 12, § 11H.  "The Commonwealth, including its agencies, is not a 'person' subject to suit pursuant to [Mass. Gen. Laws ch.] 12, § 11H."  *Williams v. O'Brien*, 78 Mass. App. Ct.

169, 173 (2010).  As an agency of Massachusetts, the State Police cannot be sued under the

MCRA.  The motion to dismiss will therefore be granted as to the civil rights claims.[3]

### B.  Tort Claims (Counts Four, Five, Seven, Eight, Ten, and Eleven)

The state-law tort claims alleged by the complaint against the State Police can only be

brought under the Massachusetts Tort Claims Act.  Mass. Gen. Laws ch. 258, § 2.  The MTCA

provides that "[p]ublic employers shall be liable for injury or loss of property or personal injury

or death caused by the negligent or wrongful act of omission of any public employee while

acting within the scope of his office or employment."  *Id.*; *see also Lewis v. Kendrick*, 944 F.2d

949, 953 (1st Cir. 1991).  The State Police  contends that the Eleventh Amendment bars those

claims.

Under the Eleventh Amendment, "states are immune . . . from private suit in the federal

courts, absent their consent" for claims seeking money damages.  *Greenless v. Almond*, 277 F.3d

601, 606 (1st Cir. 2002).  That immunity extends to any entity that is an "arm of the state."

*Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002).  Even when a

state consents to be subject to a private suit, it "can be impleaded only in the manner and to the

extent expressed . . . [by] statute."  *General Elec. Co. v. Commonwealth*, 329 Mass. 661, 664

(1953).  It is well-established that "[a] State's constitutional interest in immunity encompasses

not merely whether it may be sued, but *where* it may be sued."  *Pennhurst State Sch. & Hosp. v.

Halderman*, 465 U.S. 89, 98 (1984) (emphasis added).

Although Massachusetts has consented to suit under the MTCA in its own courts, it has

---

[3] The State Police also contends that it has Eleventh Amendment immunity from the civil rights claims.
The Court does not reach this issue.  *See Rosario-Urdaz*, 350 F.3d at 222 (courts should avoid Eleventh Amendment
immunity claims if possible).

not consented to suit in the federal courts.  Mass. Gen. Laws ch. 258, § 3;  *Caisse v. Dubois*, 346

F.3d 213, 218 (1st Cir. 2003); *Rivera v. Massachusetts*, 16 F. Supp. 2d 84, 87-88 (D. Mass.

1998).  The State Police is therefore immune from the tort claims alleged against it in the

complaint.

### C.   ADA Claim (Count Twelve)

The remaining claim in the complaint against the State Police is for violation of Title II

of the ADA (Count Twelve).  The State Police contends that the complaint fails to state a claim

for an ADA violation.  To prevail on an ADA claim, a plaintiff must demonstrate:

> (1) that he is a qualified individual with a disability; (2) that he was either
> excluded from participation in or denied the benefits of some public entity's
> services, programs, or activities or was otherwise discriminated against; and (3)
> that such exclusion, denial of benefits, or discrimination was by reason of the
> plaintiff's disability.

*Buchanan v. Maine*, 469 F.3d 158, 170-71 (1st Cir. 2006) (quoting *Parker v. Universidad de*

*Puerto Rico*, 225 F.3d 1, 5 (1st Cir. 2000)).  In wrongful arrest cases, courts have generally

recognized two types of ADA claims:  "(1) where the police wrongfully arrest someone with a

disability because they misperceive the effects of that disability as criminal activity and (2)

where police fail reasonably to accommodate a person's disability during the investigation or

arrest, causing the person to suffer greater injury than otherwise would occur."  *Montae v.*

*American Airlines, Inc.*, 757 F. Supp. 2d 47, 52 (D. Mass. 2010); *see also Steeves v. City of*

*Rockland*, 600 F. Supp. 2d 143, 179 (D. Me. 2009).

At oral argument, plaintiffs contended that the basis of the ADA claim is not the fact that

the police arrested Carlos Patino because they misperceived the effects of his disability as

criminal activity.  Instead, they contend that the State Police did not reasonably accommodate his

disability during the arrest.  They also contend that State Police policies and procedures do not

adequately take into account individuals with disabilities.

The complaint alleges that when police officers rushed into the yard, Carlos ran from them.  It further alleges that the officers forcefully brought him to the ground and arrested him. He suffered a fractured rib and multiple injuries to his forehead, left arm, right knee, and back. But there is no allegation in the complaint that Carlos suffered any greater injury than he otherwise might have if he was not disabled, and no allegation that the officers should have done something differently during the arrest to account for his disability.  *See Montae*, 757 F. Supp. 2d at 53 (arrestee's ADA claim dismissed because she made no claim she was injured to a greater extent than a non-disabled arrestee would have been).  There are also no allegations in the complaint that State Police policies, procedures, or training regarding individuals with disabilities was insufficient.[4]

Accordingly, the motion by the Massachusetts State Police to dismiss will be granted.

## V.    Motion to Dismiss of the City of Revere

The City of Revere has also moved to dismiss all the claims alleged against it.

### A.    Civil Rights Claims (Counts One, Two, Three, Six, and Nine)

The City of Revere contends that the federal and state civil rights claims alleged against it should be dismissed because it is not a "person" subject to an action brought under 42 U.S.C. § 1983 or its state counterpart, the MCRA.

To establish municipal liability under Section 1983, a plaintiff must show that "the municipality *itself* causes the constitutional violation at issue.  *Respondeat superior* or vicarious

---

[4] At oral argument, plaintiffs requested the Court not dismiss the ADA claim to await further development of the factual record.  However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S, at 678-79.  Because the complaint does not allege facts that would support an ADA claim, the claim must be dismissed under Rule 12(b)(6).

liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).

Thus, the plaintiff is required to demonstrate both the existence of a policy or custom and a

"direct causal link" between that policy and the alleged constitutional deprivation. *Id.* at 385.

Plaintiffs concede the complaint does not properly allege a constitutional violation caused by the

City's official policies or customs. Those claims will be dismissed.

As to the state law civil rights claim, the MCRA prohibits civil rights violations by "any

person or persons." Mass. Gen. Laws ch. 12, § 11H. However, "a municipality is not a 'person'

covered by the Massachusetts Civil Rights Act." *Howcroft v. City of Peabody*, 51 Mass. App.

Ct. 573, 591-92 (2001). The state civil rights claim therefore cannot be brought against the City

and will be dismissed.

### B.   Tort Claims (Counts Four, Five, Seven, Eight, Ten, and Eleven)

The complaint alleges intentional tort claims against the City for intentional infliction of

emotional distress (Count Four), false arrest (Count Seven), and assault and battery (Counts

Eight and Eleven).[5]

Plaintiffs concede that the City cannot be sued under Massachusetts law for the

intentional torts of its employees. *See* Mass. Gen. Laws ch. 258, § 10(c) (MTCA does not apply

to "any claim arising out of an intentional tort, including assault, battery, . . . false arrest,

intentional mental distress . . ."). Those claims will therefore be dismissed.

The complaint also alleges two claims of negligence against the City under the MTCA.

Under the MTCA, public employers may be liable for the negligence of their employees when

---

[5] The complaint states Count Eleven is brought for negligence in assault, battery, and false arrest. There is no tort of negligent assault or battery. *See Waters v. Blackshear*, 412 Mass. 589, 590 (1992) (defendant's conduct was battery, not negligence, because "intentional conduct cannot be negligent conduct and . . . negligent conduct cannot be intentional conduct."). Because the claim for negligent false arrest is duplicative of Count Five, the Court will treat the claim as one for the intentional torts of assault and battery.

those employees were acting within the scope of their employment.  Mass. Gen. Laws ch. 258, § 2.

The City first contends that municipal liability is not vicarious, citing *Estate of Bennett v. Wainwright*, 548 F.3d 155, 177 (1st Cir. 2008).  *Bennett*, however, concerned municipal liability under 42 U.S.C. § 1983.  *Id.*  The MTCA creates a scheme of liability different from the one under Section 1983.  It specifically creates a system where public employers are liable if a plaintiff suffers harm "originally caused by the public employer or any other person acting on behalf of the public employer."  Mass. Gen. Laws ch. 258, § 10(j); *see also Parker v. Chief Justice for Admin. and Management of Trial Court*, 67 Mass. App. Ct. 174, 178-79 (2006); *Audette v. Commonwealth*, 63 Mass. App. Ct. 727, 732 (2005).  Therefore, the City may be liable for the negligence of its employees if they were acting within the scope of their employment.

The City further contends that the vicarious liability claims in the complaint are barred by Section 10(j) of the MTCA, which exempts public employers from liability for

> any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.

Mass. Gen. Laws ch. 258, § 10(j).  "Broadly, Section 10(j) protects public employers against liability for failing to prevent harm caused by others."  *LaPierre v. City of Lawrence*, 2013 WL 1829120, at *3 (D. Mass. May 1, 2013).

In this case, however, plaintiffs are seeking to hold the City liable not for its employees' failed efforts to prevent or diminish harm, but for harm allegedly caused by the affirmative conduct of its officers while acting within the scope of their employment.  Therefore, section

10(j) does not apply.  *See Williams v. City of Boston*, 771 F. Supp. 2d 190, 199-200 (D. Mass. 2011) (defendant city's motion to dismiss denied because complaint alleged negligence by city's police officers); *Lewis v. Kendrick*, 944 F.2d 949, 953 (1st Cir. 1991) (affirming jury verdict against defendant city "for the negligence of defendant officers acting within the scope of their duty").

As to the negligence claim (Count Five), plaintiffs contend that the City can be held liable under the MTCA because its officers "negligently exceeded their common law privilege to employ force in effecting an arrest."  (Pl. Opp. to Revere's Mot. to Dismiss at *5).  "Negligence is the failure to exercise that degree of care which a reasonable person would exercise in the circumstances."  *Morgan v. Lalumiere*, 22 Mass. App. Ct. 262, 267 (1986).

The complaint alleges that City's employees were negligent when they "physically and violently engag[ed] the plaintiff without probable cause," "repeated[ly] hit[] the plaintiff in the head and body," and "plac[ed] him under arrest without probable cause."  (Am. Compl. ¶ 77).  Those allegations describe false arrest and excessive force.  False arrest is an intentional tort, and therefore cannot be brought against the City under the MTCA.  Mass. Gen. Laws ch. 258, § 10(c).  Furthermore, there appears to be no authority for the proposition that Massachusetts law allows a claim for negligent use of excessive force; normally, a claim for excessive force is a claim alleging intentional conduct.  *See Gutierrez v. Massachusetts Bay Transp. Auth.*, 437 Mass. 396, 401 (2002) (seizure requires a "means intentionally applied" to obtain control of the arrestee).  Accordingly, the complaint does not state a claim for negligence by alleging false arrest or excessive force.

Although it appears the events during an arrest can under some circumstances result in a finding of negligence, the complaint does not allege any other acts that may have been negligent

other than false arrest or excessive force.  *See Gutierrez*, 437 Mass. at 402 (noting jury found for

plaintiff on her negligence claim, but that it did not know precisely what aspect of the officer's

conduct they found to be negligent during plaintiff's encounter with police culminating in her

arrest). Accordingly, the negligence claim against the City will be dismissed.

The complaint also states a claim for supervisory negligence against the City (Count

Ten).  However, "Massachusetts cases have only allowed supervisory negligence claims against

municipalities where the municipality knew or should have known about an underlying,

identifiable tort, which was committed by named or unnamed public employees."  *Kennedy v.*

*Town of Billerica*, 617 F.3d 520, 533 (1st Cir. 2010).  The complaint does not allege that the City

knew or should have known that its officers were committing any kind of tort.

Accordingly, the City's motion to dismiss will be granted.

### D.     ADA Claim (Count Twelve)

The City contends that the complaint does not properly allege an ADA claim.  That claim

will be dismissed for the same reasons it will be dismissed against the State Police as outlined

above.

## VI.   Motion to Dismiss of McCarthy

McCarthy has moved to dismiss Counts Five and Six.  Plaintiffs have not opposed that

motion.

### A.     Negligence (Count Five)

The complaint alleges one count of negligence against the individual defendants under

the MTCA.  McCarthy contends that he cannot be sued individually under that statute.

The MTCA makes "public employers" liable for losses caused by the negligence of

"public employees" acting in the scope of their employment.  Mass. Gen. Laws ch. 258, § 2.

"The employee himself is not liable for his own negligence, however, unless he fails to cooperate with his employer in defending a suit brought against the employer." *Pruner v. Clerk of Superior Court*, 381 Mass. 309, 313 (1981) (citing Mass. Gen. Laws ch. 258, § 2).

McCarthy, as a state police officer, "was at all times material hereto, an employee of the Massachusetts State Police." (Am. Compl. ¶ 6). Even assuming he was negligent, he cannot be sued under the MTCA.

### B.   State Civil Rights Claim (Count Six)

The complaint alleges a claim against McCarthy under the MCRA. To prevail on a MCRA claim, a plaintiff must prove that: "(1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion." *Currier v. National Bd. of Medical Examiners*, 462 Mass. 1, 12 (2012). McCarthy contends the complaint does not allege any threats, intimidation, or coercion.

The complaint alleges that the police officers used excessive force in arresting Carlos Patino, which would establish a violation of a constitutional right. The complaint does not, however, allege any facts suggesting the officers used threats, intimidation, or coercion during the arrest. *See Planned Parenthood League of Massachusetts, Inc. v. Blake*, 417 Mass. 467, 473 (1994) ("direct violation of a person's rights does not by itself involve threats, intimidation, or coercion") (quoting *Longval v. Commissioner of Correction*, 404 Mass. 325, 333 (1989)). Allegations of excessive force and unlawful arrest, without more, have consistently been held not to constitute violations of the MCRA. *See, e.g.*, *Santiago v. Keyes*, 890 F. Supp. 2d 149, 156 (D. Mass. 2012) (unlawful arrest); *Farrah ex rel. Estate of Santana v. Gondella*, 725 F. Supp. 2d 238, 248 (D. Mass. 2010) (excessive force).

19

Accordingly, McCarthy's motion to dismiss will be granted.[6]

## VI.   **Conclusion**

For the foregoing reasons:

1.      The period for service of process for defendants Callahan and Duca is extended until 60 days from the date of this Order.

2.      Within 21 days of the date of this Order, either (a) defendants Callahan and Duca shall submit, *ex parte* and under seal, their home addresses to the Court or (b) counsel for those defendants shall agree to accept service for them by providing appropriate notice to counsel for plaintiffs.

3.      Upon the submission by counsel of defendants' home addresses or provision of notice that counsel will accept service for defendants, the Clerk shall reissue summons as to each and shall arrange for service by the United States Marshal who shall file a return receipt of service without disclosing the addresses.  The Clerk shall provide a copy of this Order to the Marshal, and shall otherwise communicate directly with the Marshal to ensure that defendants' addresses are not publicly disclosed.

4.      The motion to dismiss of defendants Callahan and Duca is DENIED.

5.      The motion to dismiss of defendant Massachusetts State Police is GRANTED.

6.      The motion to dismiss of defendant City of Revere is GRANTED.

7.      The motion to dismiss of defendant McCarthy is GRANTED as to Counts Five

---

[6] At oral argument, counsel for the other individual defendants indicated that McCarthy's contentions would also apply to their clients.  Because there are no motions from those defendants, the Court does not decide whether McCarthy's contentions apply to any other defendants.

and Six.

**So Ordered.**

/s/ F. Dennis Saylor

F. Dennis Saylor IV

Dated: January 16, 2014                United States District Judge